**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **CASE NO. 1:05CR330** |
| | ) | |
| **PLAINTIFF** | ) | **JUDGE PETER C. ECONOMUS** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ALLEN LEE CARRADINE** | ) | **ORDER** |
| | ) | |
| **DEFENDANT** | ) | |

This matter is before the Court upon the Defendant's Motion to Suppress. See (Dkt. # 17).

**I.    BACKGROUND**

Lakewood Police Department Detective John J. Guzik ("Det. Guzik") appeared before a judge of the Court of Common Pleas, Cuyahoga County, Ohio, on June 25, 2005 with an Affidavit for Search Warrant wherein he averred, in pertinent part:[1]

> Within the past 24 hours your Affiant conducted a drug investigation where Allen L. Carradine was arrested for possession of crack cocaine in the amount of 20.4 grams. A field test was completed on the crack cocaine where a positive test result was obtained.
>
> Allen Carradine listed his address during the booking process at 3206 West 100th Street, #4, Cleveland, Ohio. Lt. Ciresi from the Lakewood Police Department responded to the apartment complex where Allen Carradine's name was observed to be affixed to the mail box in the lobby confirming his apartment is # 4.

---

[1] The Court shall include the pertinent provisions of the affidavits cited herein in their original form without corrections of grammar or spelling.

Within the past four (4) hours your Affiant received information from a Confidential Source. The source advised that on June 24th, 2005 they were at Allen Carradine's Apartment at 3206 West 100th Street, # 4, when Allen Carradine received a call on his cell phone from an individual who wanted to purchase crack cocaine.

The source confirmed that Allen Carradine confided to the source that the caller wanted to purchase crack cocaine. Allen Carradine asked that the source respond with him to complete the drug transaction.

The source advised that they observed Allen Carradine to be in possession of crack cocaine and that they observed more crack cocaine, United States currency and a handgun in the apartment prior to them leaving to complete the drug transaction.

The source described Allen Carradine as being a Mid to Upper level Dealer.

Allen Carradine has an extensive and violent Criminal History to include Attempted Murder, Rape, and Felonious Assault.

Allen Carradine was interviewed by your Affiant after his arrest where he admitted to being a drug dealer. Carradine indicated that since his release from prison he has had a hard time obtaining employment and began selling crack cocaine.

Allen Carradine confided to your Affiant that when he purchases crack cocaine from his supplier it is in the amount of a "track." A track is common street language for four and one-half ounces. This information makes the source's comment of Allen Carradine being a Mid to Upper level street dealer credible.

AFFIANT states that in his experience narcotics are frequently carried or concealed on the people present at a location where drugs are being used, kept or sold and that the size of usable quantities of drugs are small making it easy to conceal on the person.

AFFIANT states that in his experience, persons who traffic in illegal drugs often use a motor vehicle to transport and store quantities of drugs, documents, weapons and contraband.

AFFIANT states that in his experience persons who traffic in illegal drugs keep records of drug transactions and that drug sales are facilitated and conducted through the use of telephonic means, including cellular phones,

> telephone paging systems, answering machines and answering machine tapes.
>
> AFFIANT states that in his experience persons who traffic in illegal drugs frequently keep weapons, such as firearms, on or about their person or within their possession for the purpose of guarding the illegal drugs and the large amounts of cash generated by the sale of said drugs and for use against law enforcement officials to prevent apprehension.
>
> AFFIANT avers that it is urgently necessary that the above-described premises be searched in the day season forthwith to prevent the above property from being concealed or removed, and for the safety of the executing officers.

(Dkt. # 17, Ex. # 2, Aff. for Search Warrant.) The judge issued a search warrant for the property described as "3206 West 100th Street . . . a three story brown brick apartment building located on the corner of West 100th Street and Denison Ave. the numbers '3206' are affixed and displayed on the front of the premises in white and are clearly visible from the roadway . . . apartment number 4 which has a brown wooden door with the number '4' affixed on it (located on the first floor)." (Dkt. # 17, Ex. 1, Search Warrant.)

Lakewood Police Department officers thereafter executed the search warrant and seized marijuana, a .22 caliber Browning (Buckmore) semi-automatic handgun, drug paraphernalia, $600 in U.S. currency, and a syringe with liquid. See (Dkt. # 17, Ex. 3, Inventory).

On June 27, 2005, Special Agent Lee Lucas of the Department of Justice, Drug Enforcement Administration ("SA Lucas") swore out a criminal complaint before United States Magistrate Judge David S. Perelman. SA Lucas averred, in pertinent part:

> On 6-24-05, your Affiant learned that Detective John Guzac of the Lakewood Police Department received information from a Source of Information (SOI) that a male was selling large quantities of crack cocaine in Cleveland, Ohio. The SOI advised that contact is made to this male via cellular phone number

(216) ///-0640, where the SOI arranges for the purchase of crack cocaine.

Your Affiant learned that on 6-24-05, at approximately 3:44 PM, the SOI made a tape recorded and monitored a telephone call to (216) /// - 0640. In summary, the SOI ordered crack cocaine and a meeting was set for the Walgreen's parking lot located at 1701 Detroit Avenue, Cleveland, Ohio.

At this time, the SOI was searched with negative results for any drugs or money. The SOI was provided with a kel-transmitter and $300.00 that had the serial numbers previously recorded. The SOI was followed to the area of 1701 Detroit Avenue, Cleveland, Ohio. Surveillance units maintained surveillance on the SOI until the SOI arrived to this location.

A short time later, a male, identified as Allen Lee CARRADINE arrived at the location in a vehicle. A female was also present in this vehicle. Police units observed the SOI enter this vehicle. Police units were able to overhear via the Kel-transmitter that money was being counted. At this time, police units arrested CARRADINE and the female. Seized from the front seat of the vehicle was the $300.00 of pre-recorded buy money. Seized from CARRADINE's front pocket was approximately 20.4 gross grams of a substance that field tested positive for the presence of cocaine and in your affiant's experience was consistent with crack cocaine. Also seized from CARRADINE was a cellular telephone with the corresponding telephone number (216) ///-0640 and set of keys. A search of the female was negative. This meeting was tape recorded.

The SOI was searched with negative results for any drugs or money. The SOI stated that he/she had given the $300.00 buy money to CARRADINE and that CARRADINE was counting the money when CARRADINE was arrested.

CARRADINE was advised of his Miranda Warnings by Det. John Guzac. CARRADINE stated that he understood his rights and wanted to make a statement. In summary, CARRADINE stated that the crack cocaine seized from his pocket was his, and that the female did not have anything to do with the drugs.

On 6-25-05, Det. Guzac advised the female of her Miranda Warnings and she stated that she understood her rights and wanted to make a statement. This female stated that she was present with CARRADINE at CARRADINE's residence on 6-24-05 when CARRADINE received a telephone call in which someone ordered crack cocaine. She accompanied CARRADINE to the Walgreen's parking lot when a male entered their vehicle and was in the

-4-

> process of purchasing crack cocaine when the police arrested them. The female advised that CARRADINE had additional drugs and a firearm at his residence.
>
> On 6-25-05, a Cuyahoga County search warrant was executed at CARRADINE's apartment. The name CARRADINE was observed in the lobby corresponding with apartment #4. This search resulted in the seizure of a loaded 22 caliber pistol, approximately $600.00, various drug related packaging material, a lease in the name of Allen CARRADINE for this apartment, and various articles of paperwork with the name Allen CARRADINE corresponding with this address.
>
> On 6-25-05, your Affiant and Det. Guzac advised CARRADINE of his Miranda Warnings and CARRADINE stated the he understood his rights and wanted to make a statement. CARRADINE signed a Miranda Warnings waiver form and provided an oral and written statement. In CARRADINE's written statement, CARRADINE admitted that the 19 grams of crack cocaine was his, and that the male and female that were present in the vehicle with him had nothing to do with the drugs.
>
> In an oral statement, CARRADINE admitted that he had been convicted of felonious assault and had served 3 years in prison. CARRADINE stated that after he was released, he was convicted of attempted murder and served 15 years in prison for this offense. CARRADINE stated that he was released about 5 months ago. CARRADINE stated that he had purchased one ounce of crack cocaine earlier on 6-24-05 from a black male named SHUG on East 79 Street and Carnegie Avenue, Cleveland, Ohio. CARRADINE stated that he had sold some of this crack, and that the 19 grams seized from his pocket was the remaining crack from this purchase from SHUG. CARRADINE stated that the female had nothing to do with the crack dealing, and stated that the male in the vehicle was with him when he was arrested had asked him for a ride and that he was going to receive $10.00 from this male for this ride. CARRADINE denied that he was in the process of selling crack when he was arrested. CARRADINE agreed to make a controlled purchase of crack from SHUG for the police. CARRADINE denied any knowledge of any firearms at his residence, but stated that he resided alone at 3206 West100 Street, Cleveland, Ohio.
>
> A criminal history check conducted on CARRADINE revealed that CARRADINE has previous convictions for violent felonies . . . .

(Dkt. # 1, Aff. of Lee Lucas.) United States Magistrate Judge signed the criminal complaint

-5-

alleging a violation of 21 U.S.C. § 841 (a)(1), (b)(1)(B) (possession with the intent to distribute more than 5 grams of cocaine base). See (Dkt. # 1).

On July 7, 2005, the Grand Jury of the United States District Court for the Northern District of Ohio issued an Indictment charging the Defendant with one count of violating 18 U.S.C. § 922(g)(1) (felon in possession of a firearm) and one count of violating 21 U.S.C. § 841 (a)(1), (b)(1)(B) (possession with the intent to distribute cocaine base). See (Dkt. # 7).

The instant motion ensued.

## II.    LAW AND ANALYSIS

"'It is well settled that in seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression.'" United States v. Rodriguez-Suazo, 346 F.3d 637, 643 (6th Cir. 2003) (quoting United States v. Feldman, 606 F.2d 673, 679 n.11 (6th Cir. 1979)). The Defendant contends that the search of the premises violated his Fourth Amendment right to be free from unreasonable search and seizures absent a warrant issued upon probable cause. See (Dkt. # 17 at 5). Accordingly, the Defendant seeks the suppression of "all items seized by the FBI, Lakewood Police and any other agents in the course of a search of defendant's residence located at 3206 West 100th Street, Cleveland, Ohio, on June 25,2005, together with all statements or other evidence obtained as fruits of the search." (Dkt. # 17.)

The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S CONST.

amend. IV. The warrant requirement protects against unreasonable intrusions by government agents through ensuring: (1) that a neutral and detached officer of the judiciary measure the probable cause asserted; and that (2) "those searches deemed necessary should be as limited as possible." Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971). See also Johnson v. United States, 333 U.S. 10, 14 (1948) ("The point of the Fourth Amendment . . . is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.").

The Defendant contends that the affidavit supporting the search warrant in this case lacks sufficient allegations giving rise to probable cause. See (Dkt. # 17 at 5). Specifically, the Defendant asserts that the Det. Guzik did not provide any information to the issuing judge regarding the veracity or reliability of the confidential source. See (Dkt. # 17 at 5).

Probable cause is "'a probability of a substantial chance of criminal activity, not an actual showing of such activity.'" United States v. Smith, 182 F.3d 473, 477 (6th Cir. 1999) (quoting Illinois v. Gates, 462 U.S. 213, 244 n.13 (1983)). The official issuing the warrant must make "a practical, common-sense decision" as to whether "there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." United States v. Davidson, 936 F.2d 856, 859 (6th Cir. 1991) (citation and internal quotation mark omitted); Gates, 462 U.S. at 238.

Where, as here, information in the affidavit comes from a confidential source, a court

must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances analysis. See United States v. Frazier, 423 F.3d 526, 532 (6th Cir. 2005). "While independent corroboration of a confidential informant's story is not a sine qua non to a finding of probable cause, . . . in the absence of any indicia of the informant['s] reliability, courts insist that the affidavit contain substantial independent police corroboration." Id. (citations omitted). "As long as the issuing judge can conclude independently that the informant is reliable, an affidavit based on the informant's tip will support a finding of probable cause." United States v. McCraven, 401 F.3d 693, 697 (6th Cir. 2005). An affidavit is sufficient "where a known person, named to the magistrate, to whose reliability an officer attests with some detail, states that he has seen a particular crime and particular evidence, in the recent past, [such that] a neutral and detached magistrate may believe that evidence of a crime will be found." United States v. Allen, 211 F.3d 970, 976 (6th Cir. 2000).

> Under Allen, while an affidavit must state facts supporting an independent judicial determination that the informant is reliable, those facts need not take any particular form. See [Allen, 211 F.3d] at 975-76. The affidavit could state that police corroborated significant parts of the informant's story. Or the affiant could attest "with some detail" that the informant provided reliable information in the past. Id. at 976. Or there could be other indicia of the informant's reliability, such as a detailed description of what the informant observed first-hand, or the willingness of the informant to reveal his or her name. As long as the issuing judge can conclude independently that the informant is reliable, an affidavit based on the informant's tip will support a finding of probable cause.

McCraven, 401 F.3d at 697.

In the present matter, Det. Guzik did not identify the confidential source to the issuing

-8-

judge by name or other distinguishable features.[2] Therefore, the information provided by the confidential source is akin to that provided by an anonymous tipster. See United States v. Helton, 314 F.3d 812, 820 (6th Cir. 2003) ("Anonymous tips . . . demand more stringent scrutiny of their veracity, reliability, and basis of knowledge than reports from confidential informants."). Additionally, it is uncontroverted that Det. Guzick did not present to the issuing judge any information regarding the reliability or past history of the confidential informant. However, contrary to the Defendant's assertion, these omissions do not render the search warrant presumptively invalid. See United States v. May, 399 F.3d 817, 824 (6th Cir. 2005) ("The failure to identify the informant to the issuing magistrate is not the failure of a 'minimal requirement,' nor does it make the search warrant presumptively void. Rather, it is but one 'relevant consideration[]in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations . . . .'") (quoting Gates, 462 U.S. at 233). Indeed, the search warrant for the Defendant's residence "will be deemed to be supported by probable cause if the government establishe[s] that the issuing judge had before h[er] additional evidence [that] buttressed the informant's information." Id. (internal quotation and citation omitted).

---

[2]It may be inferred from SA Lucas's affidavit supporting the issuance of the criminal complaint, and it explicitly is stated in Government's opposition brief, see (Gov't's Resp. to Def.'s Mot. to Suppress at 2), that the confidential source is the female that was arrested with Carradine, Diane McBride. However, the court's review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of the affidavit. See United States v. Frazier, 423 F.3d at 531. Consequently, the Court shall limit its analysis to the search warrant affidavit. It is undisputed in the record that the confidential source was not named or otherwise identified in the search warrant affidavit. Additionally, the Defendant has not requested a hearing on this matter and there lacks any allegation that would support a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978).

The issuing judge had before her the following information regarding the confidential source: (1) the confidential source was present in the Defendant's apartment immediately prior to the arrest; (2) the confidential source provided the address of the Defendant's apartment; (3) the confidential source observed the Defendant utilize a cellular telephone to arrange a sale of crack cocaine; (4) the confidential source observed crack cocaine, currency and a handgun at the Defendant's apartment; (5) the confidential source described the Defendant as an upper to mid level drug dealer; and (6) the confidential source accompanied the Defendant to the alleged drug transaction. See (Guzik Aff. at A-4). Det. Guzik provided evidence corroborating the confidential source's information including: an independent verification by a law enforcement officer of the Defendant's address as provided by the confidential source; the Defendant's admission as to the address of his apartment which verified the information provided by the confidential source; the Defendant's admission that he was a drug trafficker; the Defendant's further admission that he purchased generally large amounts of crack cocaine – known as a "track" – which supported the confidential source's assertion that the Defendant was a mid to upper level drug trafficker; and significantly, that the Defendant was found in possession of 20.4 grams of crack cocaine on the date described by the confidential source. These supporting facts independently corroborated the confidential source's information. Considered in conjunction with Det. Guzik's averments regarding the Defendant's arrest, this Court finds that the issuing judge had probable cause to issue the search warrant because there was a fair probability, given the totality of the circumstances, that contraband or evidence of drug trafficking and, or other felonies would

be found at the apartment utilized by the Defendant.

Assuming *arguendo* that the search warrant affidavit lacks probable cause, the Court nevertheless must deny the Defendant's motion to suppress because authorities executed the search warrant in good faith. It is well-established that suppression of evidence is not required where law enforcement officers reasonably rely in good faith upon a search warrant, even if the warrant is ultimately found to be invalid. See United States v. Leon, 468 U.S. 897, 905 (1984). There are, however, four specific situations where the "good faith exception" is inappropriate: (1) where the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2) where the issuing magistrate failed to act in a neutral and detached fashion and merely served as a rubber stamp for the police; (3) where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or where the warrant application was supported by nothing more than a bare bones affidavit; or (4) where the warrant was facially deficient in that it failed to particularize the place to be searched or the things to be seized. Id. at 914-15, 923.

There lacks any indication that Detective Guzik intentionally misled the issuing judge or that he recklessly disregarded the truth when presenting the affidavit. Similarly, the record is devoid of any allegation that the issuing judge failed to faithfully execute her role in a neutral and detached manner.

The Defendant is further unable to demonstrate that the law enforcement officials unreasonably placed reliance on the search warrant. The question of whether the officer's

reliance on the warrant was objectively reasonable turns on "whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." United States v.Weaver, 99 F.3d 1372,1380 (6th Cir. 1996) (quotation omitted). The showing required to establish that reliance was "objectively reasonable" is less than the "substantial basis" showing required to establish probable cause. United States v. Carpenter, 360 F.3d 591, 595 (6th Cir. 2004) (en banc). "It is entirely possible that an affidavit could be insufficient for probable cause but sufficient for good-faith reliance." United States v. Washington, 380 F.3d 236, 241 (6th Cir. 2004). "'[T]he relevant question is whether the officer reasonably believed that the warrant was properly issued, not whether probable cause existed in fact.'" United States v. Hython, 443 F.3d 480, ___ (6th Cir. 2006) (quoting United States v. Laughton, 409 F.3d 744 (6th Cir. 2005)).

It is beyond cavil that the executing officers had a reasonable belief that probable cause existed to search the Defendant's apartment. The Defendant was arrested and found to be in possession of crack cocaine. Upon his arrest, the Defendant admitted to purchasing relatively large amounts of crack cocaine. The Defendant verified his address and a law enforcement officer traveled to that address and observed markings consistent with the Defendant's occupancy. The law enforcement officers had information from a confidential source indicating the Defendant's activities on the day of the arrest, as well as her first-hand observation of crack cocaine, currency and firearms at the apartment. As discussed *supra*, there was sufficient independent corroboration of the confidential source's information. Based on this information, the affidavit supporting the search warrant provided a sufficient

nexus between the Defendant and his apartment to lead a reasonable officer to hold the good faith belief that the warrant was issued upon probable cause. See Frazier, 423 F.3d at 537 (The Frazier affidavit creates at least as strong a connection between the place to be searched and the evidence to be sought as the affidavits at issue in the foregoing cases. Paragraph nine of the Frazier affidavit states that the Morganfield Heights Housing Authority found drugs in Frazier's former residence on Culver Court shortly after he moved out. A reasonably well-trained officer could infer that a drug dealer who kept drugs in his former home would also keep drugs in his current home. Indeed, Agent Steward averred, based on his training and experience, that drug dealers usually continue their trade after moving to a new residence (paragraph 18), and that people who sell drugs often keep drugs and guns in their homes (paragraph 19). The inference that drugs would be found in Frazier's new residence is all the more reasonable when considered in light of the Sixth Circuit cases cited in the affidavit, which stand for the proposition that, 'in the case of drug dealers, evidence is likely to be found where dealers reside.'"); see also Carpenter, 360 F.3d at 596 (officer's good faith reliance on a warrant to search a residence was reasonable when the affidavit merely stated that a road connected it to a nearby marijuana field); United States v. Van Shutters, 163 F.3d 331, 36 (6th Cir. 1998) (upholding a search where the affidavit underlying the warrant described the residence, the items sought, and the defendant's counterfeiting scheme, but connected the place to the illegal activity only by stating that the residence "was available" to the defendant); United States v. Jones, 159 F.3d 969 (6th Cir. 1998) ("[I]n the case of drug dealers, evidence is likely to be found where the dealers live, . . . ") (internal citation

omitted); United States v. Schultz, 14 F.3d 1093, 1098 (6th Cir. 1994) (upholding a search of safe deposit boxes at a bank where the affidavit underlying the warrant connected the boxes and the defendant's trafficking in illegal drugs only by stating that the officer's training and experience led him to believe that evidence would be located there).

## III. CONCLUSION

For the foregoing reasons, the Defendant's Motion to Suppress, see (Dkt. # 17), is **DENIED**.

**IT IS SO ORDERED**.

> **/s/ Peter C. Economus - May 15, 2006**
> **PETER C. ECONOMUS**
> **UNITED STATES DISTRICT JUDGE**